STRAIN *v.* HEFLEY.

(*Jackson.*    April 20, 1895.)

JUSTICES OF THE PEACE.  *Jurisdiction of.*

A Justice of the Peace, elected for one civil district of his county, and having his residence there at the time of his election, and continuously thereafter, with an office in that district, where he holds Court regularly on one day of each week to try such causes as are then brought before him, may lawfully open another office in another civil district of his county, and there issue writs, try causes, and deliver judgments on such days of the week as he is not engaged officially in his own district.

Constitution construed : Constitution 1834, Art. VI., Sec. 15; Constitution 1870, Art. VI., Sec. 15.

Code construed : §§ 4888, 4902; 4903 (M. & V.) ; §§ 4113, 4127, 4128 (T. & S.).

Cases cited and approved : Morgan *v.* Coleman, 3 Head, 352 ; Cheatham *v.* Brien, 3 Head, 552.

*Question reserved :* Whether a Justice of the Peace does not vacate his office when he practically abandons the office he is required to keep in his own district for an office that he opens in another district.

FROM SHELBY.

Appeal in error from Second Circuit Court of Shelby County.  J. S. GALLOWAY, J.

THOS. H. JACKSON for Strain.

L. & E. LEHMAN for Hefley.

BEARD, J. This suit was instituted in a Magistrate's Court. There the defendant in error filed a plea in abatement to the jurisdiction of the Justice issuing the warrant or summons and then sitting for the trial of the cause. The plea was overruled, and, after judgment against him on the merits, an appeal was taken to the Circuit Court, where the judgment of the Justice was in all respects affirmed. The case has been brought to this Court, and presents this single question: Can a Justice of the Peace, elected for one civil district of his county, and having his residence there at the time of his election, and continuously thereafter, with an office in that district, where he holds Court regularly on one day of each week to try such causes as are there brought before him, legally open another office in another civil district of his county, and there issue writs, try causes, and deliver judgments on such days of the week as he is not engaged officially in his own district?

The Constitution of 1834, in Section 15 of Article 6, provided that "the different counties in this State shall be laid off, as the General Assembly may direct, into districts of convenient size," and that "there shall be two Justices of the Peace and one Constable elected in each district," and that "the jurisdiction of said officers shall be coextensive with the county." This provision is also found in the Constitution of 1870, Art. 6, Sec. 15.

In 1835 the Legislature passed an Act limiting the jurisdiction of Justices of the Peace as to

amount, and by the third section thereof provided "that it shall be the duty of every Justice of the Peace to designate some one certain day in every month when he shall attend at his usual place of residence, or at some other convenient place in his district, to hear and determine all matters cognizable before him; *Provided always*, That nothing herein contained shall prevent any Justice of the Peace from trying any cause that may be brought before him at any time or at any place within the county." Nich. & Caruth., 431.

This Act stood unmodified at the time of the adoption of our present Code in 1858. Section 4113 (§ 4888, M. & V.) of this Code is as follows: "The jurisdiction of Justices of the Peace, when not otherwise provided, is geographically coextensive with the county." This provision, with the addition of the word "geographically," is taken from the clause of the Constitution above quoted, and this word seems to have been used with the view of giving emphasis to the remainder of the section. But, not content with this general definition of territorial jurisdiction, and apparently with the purpose of setting at rest all questions as to the duty the Justices owed to the communities of the civil districts in which they resided and had been elected, as well as to the right to exercise jurisdiction outside their respective civil districts, but inside the limits of the county, the compilers of the Code brought forward Section 3 of Chapter 17 of

the Acts of 1835 above set out, and embodied it
in §§ 4127 and 4128 (§§ 4902 and 4903, M. &
V.), changing, however, the phraseology found in
the proviso of the Act in a slight degree, and
making § 4128 (§ 4903, M. & V.), into which it
is carried, read as follows: "He is authorized,
however, to try any cause that may be brought be-
fore him at any time and at any place within the
county, unless expressly prohibited by some positive
provisions of the Code."

The question here presented was considered in *Mor-
gan* v. *Coleman*, 3 Head, 352. That case involved
the right of a Justice to accept a confession of
judgment and a stayor of this judgment at a place
about fourteen miles away from the office where he
kept his docket and ordinarily exercised his judicial
functions. With regard to this, the Court, speak-
ing through Judge Caruthers, said: "There is a
certain place fixed by law for the Courts to trans-
act business, but none for Justices of the Peace,
except that it must be at some place within their
county. It is said by His Honor in this case,
and so argued here, that the office of a Magistrate
is his ordinary place of doing business, and where
his papers are kept. That may be so in common
acceptation, but certainly it is not exclusively so in
regard to his powers and the validity of his acts.
He can and does perform official binding acts wher-
ever he may be in the county. He is an officer
for the whole county, although elected by and lo-

cated in a particular civil district.'' This case was approved and followed in *Cheatham* v. *Brien*, 3 Head, 552.

It seems to us the meaning of the Legislature is to be found upon the face of these provisions of the law, but if there was doubt as to the general question involved in this cause, it is removed by the opinion of the Court in the case just referred to. One conclusion, therefore, is that, upon the facts presented in the plea in abatement in this record, the Justice of the Peace had jurisdiction of this cause, and the trial Judge was right in so holding. It is proper to observe, however, that the effect of this opinion is to be confined to the facts herein presented and cases involving similar facts, and is not intended to embrace a case where there has been a practical abandonment by a Justice of the office which the law requires him to keep in his own district, or the case of a removal from this district such as is contemplated by the statute.

An argument against this conclusion, rested on the ground of public policy, has been earnestly pressed upon us in this case. We think it possible, as is urged, that there may have been much abuse of this jurisdictional right on the part of Justices of the Peace, and especially in the counties of the State in which are situated our larger cities. In view, however, of the clearly expressed intent of the Legislature, as we find it, we are not at liberty to

consider this argument. If this evil exists, as is urged, its correction must be found elsewhere outside of the Courts.

The result is, the judgment of the lower Court is affirmed.